### LIFE INSURANCE COMPANY v. FRANCISCO.

1. When, under the terms of a policy of life insurance, the representatives of the party assured are to furnish, within a certain time after the death of the assured, "due proof of the just claim of the assured,"—if the party claiming the insurance-money have within the time furnished answers written out in the presence of the insurers' agent, to certain

---

* Bronson v. Rodes, 7 Wallace, 229; Trebilcock v. Wilson, 12 Id. 687.

printed questions usually furnished by the insurer, for the purpose of seeing whether the claim is just or not, and the insurer receive and keep the questions and answers without any suggestion that such preliminary proofs are insufficient, either in form or substance,—the court, on a suit for the insurance-money, has no right to determine as matter of law, that the questions and answers do not establish the justice of the plaintiff's claim, and that the plaintiff is not entitled to a verdict. Questions and answers so given furnish some evidence that the claim is just; and the matter is proper for the jury even though the contents of the paper do not as yet appear.

2. A rule of court that "in causes tried by a jury, any special charge or instruction asked for by either party, must be presented to the court in writing, directly after the close of the evidence, and before any argument is made to the jury, or it will not be considered," is a reasonable rule; and the enforcement or disregard of it is matter of discretion with the court making it, and, therefore, not the subject of a writ of error.

3. Where a medical man testifies that the "disease" of a person who had died, and on whose death a claim for insurance was made, "had been indigestion, torpid liver and colic, and that he died of acute hepatitis," and several other persons, the acquaintances of the deceased, testify that they had never known him to be unwell, or if so more than very slightly, and that they considered him to be a healthy man, an instruction to the jury that the evidence was not sufficient to enable the plaintiff (who was suing for the insurance-money on a policy of life insurance, previous to the grant of which the decedent had answered in reply to the usual questions that he had " no sickness or disease,") to recover, was held to have been rightly refused; and that the jury were rightly instructed that it was for them to determine whether the deceased had been afflicted with any sickness or disease, within the meaning of the terms as used in his answers to questions put to him prior to the issue of the policy.

Error to the Circuit Court for the District of California; the case being thus:

Dolores Francisco sued the Manhattan Life Insurance Company upon a contract of insurance, made February 5th, 1867, upon the life of her husband. The husband died twenty-four days afterwards; that is to say on the 1st of March, 1867, and before the policy actually issued. There were two conditions in the policy, which would have been issued had Francisco lived:

1st. That if any representation made by the assured in the application for the policy should prove to have been untrue, the policy should be void.

2d. That payment of the loss would be made within

ninety days after notice of the death, and due proof of *the just claim* of the assured.

Upon the trial of the cause the plaintiff offered evidence to prove the contract, and the death of her husband, and also that she had filled up in the presence of the agent of the company and handed to him, who received them without any objection, blank forms which had been furnished by the company, and which were those always used in making proof of death, but offered no evidence as to the contents of those papers. The plaintiff rested, and the defendant moved the court to instruct the jury that on the evidence given the plaintiff could not recover; which instruction the court refused to give, and the defendant excepted. *This was the first exception.*

The company then gave in evidence this and other papers which the wife had handed to the agent as proof of her right to demand the insurance-money. They contained answers by the wife herself in reference to the questions on the blank form, thus:

"QUESTION. *State all the facts regarding cause of death.*

"ANSWER. About the 14th of February, 1867, was taken sick with a severe colic fever; was confined to his house for two days; finally was well enough to attend to business five days succeeding; was again taken sick on the 22d of February, 1867, and from which sickness he died on the 1st of March, 1867.

"QUESTION. *How long has he been sick?*

"ANSWER. In both attacks about ten days.

"QUESTION. *Did he die suddenly, or was his disease after an illness of how many months, and weeks, and days' duration?*

"ANSWER. He died from an acute attack of the congestion of the liver, which produced fever, and from the effects of which he died, to the best of my knowledge and belief."

Besides the statement of the wife, there were the statements by the physician, Dr. Franklin, who had attended Francisco in his last illness; and also of an acquaintance, one Mardis. The physician stated that he had prescribed for the deceased occasionally since 1856, and had "been his physician principally for the last three or four years; his

disease had been indigestion, torpid liver, and colic," and that he died of "acute hepatitis." The acquaintance, Mardis, knew "of his being sick for short periods of a day or two, for about eighteen months previous to his death, of cramps in the stomach."

The company also gave in evidence the application for the policy and the representations therein made, referred to. The answers to the usual questions were given by Mr. Francisco, as agent for his wife. He was asked whether he had ever had liver complaint, whether any disease was suspected, whether he had had at any time disease of the stomach or bowels, whether, during the last seven years, he had any sickness or disease, and if so what were the particulars and what physician had attended him; to all which he answered in the negative.

The defendant then rested. The plaintiff then produced nine witnesses, every one of whom testified that they had known Francisco for longer or shorter terms of time, and that they had never known him to be at all unwell, or more than very slightly so; and that they considered him a healthy man. Four of these were asked whether they could say that the physician, Dr. Franklin's, statements were not correct, and answered that they could not say so; the other five were not questioned on the point.

The plaintiff rested and the evidence was closed. The defendant then prayed the court to instruct the jury that the evidence was not sufficient to entitle the plaintiff to a verdict. The court refused to grant the instruction, and the defendant excepted. *This was the second exception.*

The evidence having been summed up by counsel, the counsel for the defendant offered to the court certain instructions which he desired the court to give to the jury, but the judge refused, saying it was too late to ask instructions, after argument to the jury, to which defendant excepted. *This was the third exception.*

There was a general rule of the court—

"In causes, civil or criminal, tried by a jury, any special charge or instruction asked for by either party must be pre-

sented to the court, in writing, directly after the close of the evidence, and before any argument is made to the jury, or they will not be considered."

The court instructed the jury that it was for them to determine whether the deceased had had any disease or sickness within the meaning of the term as used in the question answered by him; that he might have had a cold or headache so slight as not to constitute sickness or disease within the meaning of the question, to which part of the charge the defendant excepted. *This was the fourth exception.*

The court proceeded to say that the ailment might be so serious as to constitute disease.

The court instructed the jury that it was for them to determine whether the party had been afflicted with any sickness or disease within the proper meaning of those terms, as used in the application; to which part of the charge the defendant excepted. *This was the fifth exception.*

Verdict and judgment having gone for the plaintiff, the case was brought here on the following assignments of error:

I. The court erred in refusing the instructions asked as stated in the first and second exceptions.

II. The court erred in refusing to consider the request for instructions after the close of the argument to the jury, as stated in the third exception.

III. The court erred in charging the jury as stated in the fourth and fifth exceptions.

*Messrs. J. M. Carlisle and J. D. McPherson, for the plaintiff in error; a brief of Messrs. Doyle and Barber being filed on the same side:*

*As to the first exception.* The court allowed the plaintiff to recover on evidence that the defendant had made the agreement declared on, and that the person whose life was assured had died, with further proof that papers, in the form of those used by the company in " proof of the just claim of the assured," had been prepared and handed to the agent of the defendant.

Now, the plaintiff, by the terms of the policy, was bound to furnish, *first*, " satisfactory evidence of the death of the insured," and *second*, " proof of the just claim of the assured under this policy." The defendant had offered no proof on the latter point when the instruction was asked and refused. The proofs were correct in form but bad in substance. The company was not bound to return them, or ask an explanation, or suggest a mode of explaining away fatal admissions.*

The instruction was asked after the plaintiff had rested, and it was in the nature of a demurrer to the evidence.

*As to the second exception.* The preliminary proofs offered by the plaintiff are admissions by her, and they show that the deceased, her agent, had given false answers to the questions contained in the application for the policy. If this was so, then, by the very terms of the policy, there could be no recovery. The questions were in writing, the answers in writing, and the plaintiff's admissions in writing; these writings it was the province of the court to construe to the jury.

*As to the third exception.* The refusal of the judge to consider any instructions asked after argument to the jury was in accordance with a rule of the court, but the right of counsel to submit instructions at any time before the jury leave the box is part of the common law of the land and cannot be taken away by such rule. This is decided by the Supreme Court of California in *People* v. *Williams.*†

*As to the fourth and fifth exceptions.* The charge of the court was erroneous in the particulars excepted to. There was no evidence before the jury tending to show that the disease specified by Dr. Franklin, or the sickness testified to by Mardis, was not in fact sickness or disease. Certain ordinary acquaintances of Francisco's, not one of whom is shown ever to have crossed his threshold, did not witness the specific attacks of sickness and disease spoken of by Franklin and Mardis, and of course knew nothing of them. They did not

---

* Campbell *v.* Charter Oak, 10 Allen, 213; Irving *v.* Excelsior Ins. Co., 1 Bosworth, 514; Kimball *v.* Hamilton Ins. Co., 8 Id. 495; Washington Marine Ins. Co. *v.* Herckenrath, 3 Robinson (N. Y.), 325.

† 32 California, 286.

pretend to deny their occurrence. Their testimony proved nothing more than that Francisco's general health, so far as they knew, was good. When a medical witness says that he has attended a patient for years for a disease which he characterizes as indigestion, torpid liver, and colic, and another witness speaks of the patient as having been subject, for eighteen months or two years prior to his decease, to attacks, lasting a day or two, of cramps in the stomach, and these witnesses are uncontradicted, it is error to intimate to the jury that they are at liberty to find, *from the evidence,* that there was no disease in the case. *Parks* v. *Ross*\* rules this. The evidence on the point was all in one direction, but under the intimation of the court the jury disregarded it, and *assumed* that certain specific attacks of indigestion, colic, torpid liver, and cramps of the stomach, running through a series of years, were of so trivial a character as not to amount to sickness or disease.

*Mr. C. W. Kendall, contra.*

Mr. Justice STRONG delivered the opinion of the court.

The evidence that preliminary proof of the death of Francisco and of the justice of the claim of the assured were given to the defendants ninety days before the suit was brought was quite sufficient to go to the jury. The proofs were in forms, blanks for which had been furnished by the insurers, and the forms were filled up in the presence of their agent. He received them without objection, and it does not appear that at any time before the trial of the case it was ever suggested to the assured that the proofs were insufficient, either in form or in substance. Clearly, therefore, it was not for the court to instruct the jury that the plaintiff was not entitled to a verdict. It seems to have been the idea of the defendants that the statements of the witnesses by whom the preliminary proofs were made did not establish the justice of the plaintiff's claim. But whether they did or not was a question which the court had no right to determine as a conclusion of law. They furnished, at

---

\* 11 Howard, 373.

least, some evidence that the claim was just, and this they would have furnished had they contained nothing more than averments that the defendants had agreed to insure, and that the person whose life was insured had died. The first assignment of error is, therefore, not sustained.

The second is equally without merit. After the case had been summed up, and when the court was about to charge the jury, the defendants offered to submit prayers for instructions, but the court refused to receive them, assigning as a reason that the offer was too late. This is alleged to have been an error. What the prayers were, whether the instructions asked were pertinent to the case or not, or whether they could rightfully have been given had they been received, we are not informed. They were not incorporated in the bill of exceptions, and they do not appear in the record. But, assuming that they were such as the court ought to have given had they been presented in time, there was no error in refusing to receive them after the case had been argued to the jury. The rule of the court then existing was as follows : " In causes, civil or criminal, tried by a jury, any special charge or instruction asked for by either party must be presented to the court, in writing, directly after the close of the evidence and before any argument is made to the jury, or they will not be considered." This is a reasonable rule, intended to guard as well the court as the opposite party against sudden surprise. It does not deprive either party of a right to the opinion of the court upon any material propositions which he may desire to have presented to the jury. It merely regulates the exercise of that right. The rule exists in very many courts, and it has been found necessary in the administration of justice. No doubt a court may, notwithstanding the rule, in its discretion, receive prayers for instructions even after the general charge has been given to the jury, but neither party can claim as a right a disregard of the ordinary rules of practice in the court. There is nothing inconsistent with this to be found in the case cited.* On the contrary, whether a court shall

---

* People v. Williams, 32 California, 286

enforce such a rule, or depart from it, is treated in that case as a matter resting in the discretion of the court. That it is competent for courts to adopt such a rule has often been decided, and once, at least, if not oftener, in California.* ·

The remaining errors have been assigned to the charge of the court. The principal defence set up at the trial was that in the application for insurance false answers had been given to the questions propounded by the defendants. Those questions were, in substance, whether the person whose life was proposed for insurance had had certain diseases, or, during the next preceding seven years, any disease, and the answers given were that he had not. It was in reference to this that the court instructed the jury it was for them to determine from the evidence whether the person whose life was insured had, during the time mentioned in the questions propounded on making the application, any affliction that could properly be called a sickness or disease, within the meaning of the term as used, and said, " for example, a man might have a slight cold in the head, or a slight headache, that in no way seriously affected his health or interfered with his usual avocations, and might be forgotten in a week or a month, which might be of so trifling a character as not to constitute a sickness or a disease within the meaning of · the term as used, and which the party would not be required to mention in answering the questions. But again, he might have a cold or a headache of so serious a character as to be a sickness or disease within the meaning of those terms as used which it would be his duty to mention, and a failure to mention which would make his answer false."

There is no just ground of complaint in this instruction, either considered abstractly or in its application to the evidence in the case. It was, in effect, saying that substantial truth in the answer was what was required. If, therefore, the defendants have been injured it was by the verdict of the jury rather than by any error of the court.

JUDGMENT AFFIRMED.

---

* People *v.* Sears, 18 California, 635.