MURRAY HOSPITAL, RESPONDENT, *v.* ANGROVE, APPELLANT.

(No. 6,910.)

(Submitted March 15, 1932. Decided March 29, 1932. Opinion on Motion for Rehearing Filed April 23, 1932.)

[10 Pac. (2d) 577.]

*Mr. R. Lewis Brown,* for Appellant, submitted a brief and argued the cause orally.

*Mr. J. A. Poore,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, William Angrove, has appealed from a judgment against him and in favor of the plaintiff, Murray Hospital, a corporation, entered in an action in debt.

The facts on which the trial court rendered its judgment were agreed upon and are as follows: The defendant is a hoisting engineer engaged in a hazardous employment for the Anaconda Copper Mining Company. The employer operates under "Compensation Plan No. 1" of the Workmen's Compensation Act (Rev. Codes 1921, sec. 2970 et seq.), and the defendant comes under its provisions. Under a permissive provision of the Act, the employer in 1922 entered into a contract with the plaintiff hospital for necessary treatment of employees engaged in hazardous employment, and designated those employees who come within the provisions of the contract, the defendant being among those so designated, and having elected to accept the benefits of the contract. Thereunder the contracting hospital is bound to provide each employee entitled to the benefits of the contract "all necessary medical, hospital and surgical attendance for sickness contracted during the time such man is employed by the party of the second part, save and except venereal diseases and sickness which has resulted from intoxication," and to also provide such services "for injuries received in, arising out of and in the course of such employment."

On the 24th of December, 1928, while proceeding from his home to his place of employment, in the usual and direct route and proceeding with due care, defendant was struck by an automobile and suffered an injury to his knee. The place of the accident was perhaps midway between his home and place of work, which were about three miles apart. The defendant worked as usual for several days, during which time he suffered from pain in his knee which finally became

so intense that he entered the hospital for treatment; he was given proper care until he was completely cured, and then discharged. Thereafter the hospital brought action and secured judgment for the sum of $25, as the reasonable value of the services rendered. The amount in dispute is trivial, but the principle involved is far-reaching in its effect and renders a careful consideration of the questions presented imperative.

It is conceded that the contract provides for treatment under two divergent sets of circumstances, to-wit: (1) For injuries received in, arising out of, and in the course of, the employment; (2) for sickness contracted during the time when the man is employed by the contracting employer, save and except for venereal diseases and sickness which has resulted from intoxication.

It is clear that the first obligation has to do only with those injuries resulting from an industrial accident; "an injury resulting from some fortuitous event, as distinguished from the contraction of disease" (sec. 2870, Rev. Codes 1921); while the second is in addition to, and apart from, any disability arising out of and in the course of the employment.

If the wording of the second obligation was not in itself sufficient to show the intention of the parties and of the law on the subject as hereinafter discussed, the exceptions made place the meaning beyond question; no such sickness as is excepted could be contracted as a result of, or in the course of, the employment, and, had it been the intention of the contracting parties that the obligation here considered should apply to "sickness" arising out of and in the course of the employment, the exceptions would not have been inserted.

Counsel for the defendant asserts that defendant was entitled to the services rendered without further compensation than that paid under the contract under either or both of the above provisions; while counsel for plaintiff contends, first, that the employees of the contracting employer are entitled to treatment for an "injury," pursuant to the obligation of the contract, only when such injury would entitle them to compensation under the Workmen's Compensation Act, and that defendant's

injury was not such an injury; second, that the second obligation extends only to attendance in case of "sickness," and that plaintiff's disability does not come within the definition of that term.

The contract was made pursuant to the permission granted in the Workmen's Compensation Act and in conformity therewith; consequently the Act itself becomes a part of the contract, and the contract must be construed in the light of the true intent and purpose of the Act. In order intelligently to determine the rights of the respective parties under the contract, we must first have a clear understanding of the fundamental principles, the intent of, and the object to be attained by, the Act.

It has been said that "until very recently it has been difficult for American lawyers to reconcile themselves to the fundamental changes which workmen's compensation laws accomplish in the principles underlying doctrines with which they have long been familiar. The doctrine that an employer shall be responsible for injuries to his workman, whether or not the master is at fault, until very recently, in most parts of the United States, met with almost instant opposition whenever it has been made," but that "since compensation Acts have been put into practical operation in many states the great saving which they have effected, in many ways, has produced a revolution of feeling in regard to them." (Bradbury's Workmen's Compensation Law, 3d ed., 1.)

Such a law must necessarily grow through operation and experience; as the vision expands, so does the law. In line with the modern trend of economic and humane thought, this state enacted its first Workmen's Compensation Act in 1915 (Chap. 96, Laws of 1915); many changes have since been made, and many will doubtless be made in the future. It is not perfect by any means.

The original idea embodied in such laws was merely compensation for injury through industrial accident; hospitalization by reason of such injury is but a part of that idea, but hospitalization for disability in no way arising out of and in

the course of the employment is a step forward in the development of the law.

In 1919 this court declared the theory of our Act to be "that loss occasioned by injury to the employee shall not be borne by the employee alone—as it was under the common-law system—but directly by the industry and indirectly by the public, just as is the deterioration of the buildings, machinery and other appliances necessary to enable the employer to carry on the particular industry," and observed that "the object sought commends itself not only as wise from an economic point of view, but also as eminently just and humane." (*Shea* v. *North-Butte Min. Co.*, 55 Mont. 522, 179 Pac. 499, 501. See, also, *Dosen* v. *East Butte Copper Min. Co.*, 78 Mont. 579, 254 Pac. 880, 886.)

In Bradbury's work, above (page 1), it is said: "Testimony from foreign countries and a rapidly increasing fund of evidence from many of the states of the Union, prove that it is not taking the employer's property without due process of law to compel him to pay compensation to an injured workman, when the injury is due to a risk which is necessarily incident to the business. An assertion to the contrary is an economic fallacy. The amount paid in compensation to injured workmen will be added to the cost of the article produced and in the readjustment, which is inevitable, the expense will be borne by the community generally. All experience proves this beyond question." This is in keeping with the theory of the Compensation Law. Capital, labor, machinery and plant form component parts of the "industry," the breaking down of any one of which cripples the industry, and its rehabilitation should be at the expense of the industry "directly," but borne "indirectly by the public."

Prior to the enactment of Workmen's Compensation Laws, "while fire, deterioration of plant and financial loss were insured against, and the insurance, whatever form it took, was charged to the cost of production, no account was taken of the deterioration of the human machine." (*State ex rel. Duluth Brewing & Malting Co.* v. *District Court,* 129 Minn.

176, 151 N. W. 912, 15 N. C. C. A. 275.) Awakening to the injustice and economic waste of such a situation, during the past thirty years Compensation Acts have been passed by the federal government and by forty-two of our states. (Harper on Workmen's Compensation, 2d ed., 16.)

Under our Act three plans of compensation are provided: Plan No. 1, under which the employer here operated, permits the employer, on proof of solvency and financial ability to do so, to make the required payments directly to the injured workman; plan No. 2 requires the employer to insure his employees, and plan No. 3 requires the employer to pay into the accident fund a sum equal to a percentage of the annual pay-roll, out of which fund the Accident Board makes the payments. (Secs. 2970, 2978, 2990, Rev. Codes 1921.) These payments are only made in case of injury arising out of and in the course of the employment, and are comparable to the restoration of loss to capital through some fortuitous circumstance, from the industry. In addition to compensation, our Act requires the employer operating under plan No. 1, the insurer when plan No. 2 controls, or the Industrial Accident Board where the industry comes under plan No. 3, to furnish to an injured employee, free of cost to him, all necessary and reasonable medical, hospital and surgical services for a period not to exceed six months and of a value up to $500, with additional and like services if found by the board to be necessary. (Sec. 2917, Id., as amended by sec. 14, Chap. 121, Laws of 1925.) This provision is for the restoration of the injured employee, and is comparable to repairs of machinery or restoration of the plant after injury by fire; it applies, however, only in case the injury received is such as would entitle the injured person to compensation, as it refers back to "the injury" theretofore discussed in the Act and for which provision is made for compensation. It is a part of the compensation for the injury. (*Central L. & C. Works* v. *Industrial Com.*, 290 Ill. 436, 125 N. E. 369; Harper on Workmen's Compensation, 2d ed., 294.)

While there are certain exceptions to the general rule, based upon peculiar facts and circumstances, no court has held that a workman going to or from his place of employment in the ordinary manner is entitled to either compensation or hospitalization if injured en route by an instrumentality not under the control of his employer, either under the ordinary provisions for compensation or treatment after suffering injury from an industrial accident, and no such holding would be justified under our Act, as the injury could not arise out of or in the course of the employment, for the employment ceases ordinarily when the period of service is at an end and the workman leaves the plant for the night, and does not again begin until he reaches the plant on the next working shift or day.

The decisions departing from this rule hardly declare exceptions, but rather find in the evidence sufficient facts on which to declare that, although away from the plant, by reason of the particular facts and circumstances the employee was still on his employer's business, and, although in a place traveled by the general public, he was thereby subjected to a greater risk than were members of the general public. Typical of this class of cases are *Cudahy Packing Co.* v. *Parramore*, 263 U. S. 418, 30 A. L. R. 532, 68 L. Ed. 366, 44 Sup. Ct. Rep. 153; *Bountiful Brick Co.* v. *Giles*, 276 U. S. 154, 66 A. L. R. 1402, 72 L. Ed. 507, 48 Sup. Ct. Rep. 221; *Herberson* v. *Great Falls Wood & Coal Co.*, 83 Mont. 527, 273 Pac. 294; *Landeen* v. *Toole County Refining Co.*, 85 Mont. 41, 277 Pac. 615; *Nicholson* v. *Roundup Coal Min. Co.*, 79 Mont. 358, 257 Pac. 270. Many cases discussing the question of injuries received while going to and from work are correlated and the distinctions noted in Harper's Workmen's Compensation, at pages 69 to 89.

Here the defendant was merely traveling a city street where he was subjected only to the hazards common to all pedestrians, and, although he was on his way to work, under all of the authorities his injury did not arise out of and in the course of his employment, and by reason thereof he was neither entitled to compensation nor to hospitalization under the general provisions last quoted.

However, by section 2907, Revised Codes of 1921 (now ▮ amended by sec. 1, Chap. 177, Laws of 1929), the employers and employees are permitted to waive the provisions of section 2917 above, and to enter into a "mutual contract or agreement" with a hospital; this the parties here have done. This section provides that the contract must provide for treatment in the two classes of cases above mentioned; the contract under consideration follows the wording of the statute, in this regard, substantially. The statute further provides for the withholding from the monthly wages of all employees entitled to benefits, and payment over to the hospital, of $1 for each employee, and that "no profit, directly or indirectly, shall be made by any employer as a result of such hospital contract."

Counsel for defendant contends that, because the service under section 2917 is free, and, under the contract, the payment is made from the wages of the workmen, the last-quoted provision is violated, as the employer under plan No. 1 is relieved of substantial payments he would otherwise be required to make. This contention is without merit here, as the two statutes are to be construed together, and the Act in its entirety permits to be done just what was done; the provision can mean no more than that the employer shall retain, or be paid back, no part of the money paid to a contracting hospital, or, if the employer maintains a hospital, it shall be no more than self-supporting.

The provision in section 2907, and in the instant contract for hospitalization, for injuries "arising out of and in the course of the employment," is but a substitution for that required under section 2917; each expresses the thought of the repair of an integral part of the industry, but requires such attempted restoration to capacity only in the event the breakdown was caused within the industry. This is as far as most, if not all, of such Acts, other than our own, go; in none of the works on the subject is there any discussion of such a provision as we here have under consideration, providing, as it does, for hospitalization in case of sickness "as well as" for the injuries last mentioned. (See synopsis of all such Acts,

"Workmen's Compensation Statute Law," by Hill & Wilkin.) Consequently, our attention has been called to no case, and we have found none, construing such an Act as ours.

It would seem that the framers of our Act had a broader ▮ vision than that which had inspired previous Acts; a vision which embraced the idea of restoration of capacity of that unit of industry made up of labor, regardless of the cause of its breakdown, except in case the incapacity resulted from a man's own vice, just as the industry would restore to capacity a unit of the machinery used in the industry, regardless of the cause of its breakdown. This broadened scope of the attention to be provided for employees would seem to be as economically sound, and as just and humane, as the initial provisions requiring the industry to compensate and care for workmen injured in the course of employment.

In enacting this advanced legislation, however, our lawmakers employed only the term "sickness," and it is now contended that, while the hospital would be required to care for a designated employee who has contracted typhoid fever from drinking polluted water, pneumonia from exposure, tuberculosis or any of the contagious diseases, blindness or even insanity, all of which unquestionably come under the designation of "sickness," it is not compelled to treat an employee who has been "injured" in any manner other than in an industrial accident.

In support of its contention that "sickness" does not include an injury, the plaintiff has cited the New Standard Dictionary's definition of the term, "affected with disease of any sort; not in good health; ill," and *Kelly* v. *Ancient Order of Hibernians,* 9 Daly (N. Y.), 289, wherein it is stated that "the words 'sickness' and 'illness' apply solely to diseased condition of the organs of the human system," in holding that, under the constitution of the defendant order providing for definite sick benefits, a "permanent bodily injury," which does not affect the general health of the injured party, does not constitute "sickness," within the meaning of the defendant's constitution. On the authority of the *Kelly Case* it was later held in

New York that a temporary disability caused by the bite of a dog, but which did not affect the general health, did not come within the provision for sick benefits in a "beneficial association" (*Villone* v. *Guardla Perticara,* (Sup.) 114 N. Y. Supp. 801); and in another fraternal benefit association case, the distinction between an accident insurance policy and a sick benefit provision is discussed, and it is held that the breaking of a leg would entitle a man to collect under the first but not under the second, otherwise he might collect from both insurers. The court declared: "The accident contract is intended to apply to all cases of disability which are the natural and ordinary results of external physical injury due to accident; the sick benefit to all cases of disability which are the natural and ordinary results of disease arising from a pathological condition." (*Beaudoin* v. *La Societe St. Jean Baptiste,* 116 Me. 428, L. R. A. 1918B, 641, 102 Atl. 234, 235.)

These decisions are technically correct. Under the scientific, technical definitions of "sickness," the disability must arise from a pathological condition and affect the organs of the human system. But in cases concerned with old-line insurance it is said that such a term "must be considered, * * * not in the light of scientific technical definitions, but in the light of the insured's understanding in connection with which the terms are employed," or construed according to common understanding and the policies, liberally construed in favor of the insured. In this class of cases "sickness" is defined merely as "a condition interfering with the usual avocations." (*Northwestern Mutual Life Ins. Co.* v. *Wiggins,* (C. C. A.) 15 Fed. (2d) 646, 648; *Manhattan Life Ins. Co.* v. *Francisco,* 84 U. S. (17 Wall.) 672, 21 L. Ed. 698; *Milan* v. *Norwich Union Indemnity Co.,* 107 W. Va. 574, 149 S. E. 668.)

The dictionary on which plaintiff relies gives "ailment" as a synonym of sickness, and "affection" as a synonym of ailment, and the applicable definition of "affection" as "a bodily state; esp. Med., abnormal bodily state; morbid symptom; malady." When a man's body is bruised, wrenched or broken by outside violence, it is surely in an abnormal state.

However, whether or not this *medical* definition of the term is broad enough to cover "injury" is immaterial, as the term used must be considered in its common acceptation and understanding, in the light of the object and purposes of the Act under which the contract was made, and the intention of the parties in interest and in a liberal construction of the Act and the contract. Mr. Chief Justice Callaway, speaking for this court, has said: "It has been the constant endeavor of this court, not only in obedience to the statute (sec. 2964, Rev. Codes 1921), but also in view of the rationale of the legislation, to interpret the provisions of the Act liberally with a view to accomplish the result intended" (*Dosen* v. *East Butte Copper Min. Co.*, supra); this we must do in the instant case, as the requirement of treatment is not a mere matter of agreement between the contracting parties, but is imposed by the Act, under which the intention of the lawmakers became a part of the contract, and which controls both as to the obligation of the employer and the rights of the employees. (*Hull* v. *United States Fidelity & G. Co.*, 102 Neb. 246, 166 N. W. 628.)

It seems clear from the wording of section 2907, above, considered in the light of the purposes of the Act, that, having in so far as possible provided for the shifting of all loss and expense which might be incurred in those cases for which provision was theretofore made in like Acts, from the employee to the industry, when our lawmakers determined to go a step further and cast the burden of restoration of a unit of the industry, incapacitated otherwise than by the industry, upon the industry, they intended the effect of the further provision to be the same as that of the provision already covered.

Under the common law, the employer was only liable for injuries caused by his negligence. The Compensation Acts originally gave compensation, including treatment for restoration, whenever an injury was caused by the industry, without consideration of fault, and these provisions require compensation in case of any manner of "sickness" as a result of an industrial accident, even to the extent of including the contraction of pneumonia by exposure away from the plant, but

while being taken home after suffering an injury. (See Harper on Workmen's Compensation, p. 330.)

Why, then, when the legislature has gone one step further and attempted to protect the employee also against loss through disability not caused by the industry, should that protection be confined to disability from pathological condition? Why grant treatment when the body is assaulted by a germ and deny it when assaulted by an automobile?

A case in point, under a kindred statute, is *Doody* v. *Davie*, 77 Cal. App. 310, 246 Pac. 339. Under the charter of Oakland a fireman becoming "incapacitated for duty by reason of sickness shall be entitled to sixty days" sick leave without loss of pay"; further provision is made in case of continued "sickness." While at his home a fireman stepped on a nail and suffered an "injury" to his foot. There, as here, there was no showing made that the injured man suffered from any "sickness" by reason of his injury, other than the natural effects of the injury itself. There, as here, it was contended that the provision did not cover "incapacity * * * arising solely from injuries not received in the performance of any duty," and that, as the charter further provided for medical, surgical and hospital treatment for "injuries" received in the course of duty, it was evident that there was an intention evidenced to draw a distinction between sickness and injury. The court held that the term "sickness" "certainly does" include injury "in its popular significance and in the definition found in such a standard work as Bouvier's Law Dictionary, where it is said: 'Sickness. By sickness is understood any affection of the body which deprives it temporarily of the power to fulfill its usual functions. It has been held to include insanity. (L. R. 8 Q. B. 295.) Sickness is either such as affects the body generally, or only some part of it.' " The court declared that the differentiation which would make an award in case the injured man developed a fever or nausea, and deny it in case his constitution was strong enough to withstand the shock and pain without bodily reactions, is incapable of practical application, and that

the plaintiff was entitled to the benefits of the Act under consideration.

We conclude that the legislature used the term "sickness" in its "popular significance," and intended that each employee specified should receive hospitalization for "any affection of the body which deprives it temporarily of its power to fulfill its usual functions," save and except those which develop because of his own vice.

The judgment is reversed and the cause remanded to the district court of Silver Bow county, with direction to dismiss the action.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

---

## ON MOTION FOR REHEARING.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff has moved for a rehearing on the ground that the opinion herein is in conflict with the construction placed on section 2907, Revised Codes of 1921, by the legislature and by the Industrial Accident Board. Although not incorporated in the agreed statement of facts, nor suggested on appeal, it is here made to appear that in 1923 and 1924 the then chairman of the board construed the section contrary to our construction of it, and, in 1931, a bill was introduced in the senate amending the section by adding, after the word "intoxication," "and for accidental injuries received outside his or her employment, except additional injuries as a result of intoxication or violation of law," which bill passed the senate, but was not concurred in by the house. Without passing on the propriety of presenting these new matters at this time, we will dispose of the contentions made.

We agree with counsel that it is the duty of the court to ascertain, if possible, the intention of the legislature in

passing an Act and to give effect thereto, and that, under proper circumstances, the court may resort to the history of the bill at the time of its enactment into law, and to the legislative journals of the time for this purpose. (*Lerch* v. *Missoula Brick Co.*, 45 Mont. 314, Ann. Cas. 1914A, 346, 123 Pac. 25; *Sullivan* v. *City of Butte,* 65 Mont. 495, 211 Pac. 301; *Pennsylvania R. Co.* v. *International Coal Co.,* 230 U. S. 184, Ann. Cas. 1915A, 315, 57 L. Ed. 1446, 33 Sup. Ct. Rep. 893; *United States* v. *St. Paul Ry. Co.,* 247 U. S. 310, 62 L. Ed. 1130, 38 Sup. Ct. Rep. 525, 528.)

Also, when an amendment is offered to a pending bill and rejected, the intention of the legislature is manifest that the law shall not read as it would if the amendment had been accepted, and the courts cannot do "by construction what the legislature refused to do by enactment." (*McDonald & Johnson* v. *Southern Express Co.,* (C. C.) 134 Fed. 282, 288; *United States* v. *United Shoe Machinery Co.,* (D. C.) 264 Fed. 138, 174, affirmed 258 U. S. 451, 66 L. Ed. 708, 42 Sup. Ct. Rep. 363.)

However, as indicated by the foregoing authorities, it is the contemporaneous action and construction by the legislature to which we may resort in order to determine the intent of that body in enacting a law or rejecting an amendment thereto.

No case has been cited, or found, holding that the records and journals of subsequent sessions of the legislature have any probative value in determining the intent of the legislature in passing laws already on the statute books, or that the defeat of an attempted amendment to a law which has been on the books for sixteen years throws any light upon the intent of the assembly which enacted that law.

But, even if the action of the assembly of 1931 in refusing to amend the Act of 1915 is conceded to be a legislative expression entitled to consideration, the showing made does not disclose legislative "interpretation" of section 2907, necessarily in conflict with the opinion herein as written. All that is disclosed by the petition for rehearing is that some conflict had arisen between employees and hospital contractors or employers

as to the proper construction of the Act, and that the board had ruled, in certain instances, against the employees, and that, thereafter, an attempt was made to amend the Act. It may be that the attempt was made merely for the purpose of overcoming adverse rulings by the clarification of the Act, and it is as reasonable to presume that the house, in rejecting the amendment, determined that it was so "plain, simple, direct and unambiguous" as to require no interpretation or clarification (*Cruse* v. *Fischl*, 55 Mont. 258, 175 Pac. 878), as that the house refused to "change" the law.

As to departmental construction, we find two letters written by a former chairman of the Accident Board; the first on December 22, 1923, in answer to a request for advice as to whether the provisions of section 2907 required hospitalization of an employee who was stricken with "sickness" while off shift. Having correctly answered the query, the chairman indulged in the *obiter dictum:* "The same is not true as regards injuries," because the Act specifically mentions injuries arising out of and in the course of the employment. The second letter, written in November, 1924, by the same chairman, is a direct ruling on request of an employer, and therein it is stated that the hospital contracts do not require attention to a man injured at his home, declaring "this rule has been laid down by the Montana supreme court (*Wiggins* v. *Industrial Accident Board*, 54 Mont. 335 [170 Pac. 9, L. R. A. 1918F, 932, Ann. Cas. 1918E, 1164])." The cited case lays down no such rule; it has to do solely with compensation and what "injuries" justify an award thereof.

This court has held, and now reaffirms, that "it is a 'settled rule that the practical interpretation of an ambiguous or uncertain statute by the executive department charged with its administration is entitled to the highest respect, and, if acted upon for a number of years, will not be disturbed except for very cogent reasons.'" (*State ex rel. Public Service Com.* v. *Brannon*, 86 Mont. 200, 67 A. L. R. 1020, 283 Pac. 202, 206); but this rule is "only applicable in a condition of things where vested rights have been ac-

quired, and where for many years the construction insisted upon has been the rule of action; and to disturb it would be to work great public and private injury and inconvenience." (*Hilburn* v. *St. Paul, M. & M. Ry. Co.*, 23 Mont. 229, 58 Pac. 551, 811, 812.) The record now before us does not disclose such a "condition"; presuming that the one employer acted upon the advice given, although the record makes no such showing, no vested rights were acquired thereby and, while the chairman states that his ruling has been followed "in dozens of cases," his published reports show other cases involving sickness from pathological condition only.

Further, "the intention of any legislation must be inferred ▆▆▆▆▆▆ in the first place from the plain meaning of the words used. If this intention can be so arrived at, the courts may not go further and apply other means of interpretation" (*State* v. *Cudahy Packing Co.*, 33 Mont. 179, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 823, 837), and "no rule of construction can justify the disregard of the plain mandate of the law" (*Maki* v. *Anaconda Copper Min. Co.*, 87 Mont. 314, 287 Pac. 170, 173).

The rulings of the board amount to no more than an erroneous decision of a trial court.

It is further contended that the opinion herein violates the rule that the court should give effect to every part of a statute, if possible to do so, in that the construction given renders "meaningless and needless" the "statutory phrase or clause: 'As well as for injuries arising out of and in the course of the employment.' "

There is no merit in this contention. Section 2907, originally and as amended, gives to the industry the option to "waive" the provisions of section 2917, which provides only for hospital, medical and surgical care in case of injuries arising out of and in the course of the employment, but declares that, if this option is exercised, the hospital contract "must provide for" the attention therein described, "as well as" for the attention required under section 2917. In other words, section 2917 requires the employer, the insurer or the accident fund to

pay for the treatment of an employee injured through an industrial accident, but is granted the option to evade this financial obligation by a hospital contract financed by a deduction from the wages of all employees entitled to the benefits of the contract, provided the contract guarantees to the workmen hospitalization for other bodily affections, "as well as" for those arising out of and in the course of the employment.

The meaning of the statute is clear: If the employer would relieve himself of the burden placed upon him by section 2917, he must provide, not only for the treatment required by that section, but the additional treatment specified in section 2907, in consideration of the benefit accruing to him and the financial burden placed upon the workmen.

The motion for a rehearing is denied.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.