# CHARLESTON.

### W. O. MYERS, COMMITTEE &C. v. THE MUTUAL LIFE INS. CO. OF NEW YORK.

Submitted February 11, 1919.    Decided February 18, 1919.

1. INSURANCE—*Life Insurance—Representation or Warranties.*

    The declarations and statements made by the insured in an application for a policy of life insurance are, according to their nature and effect, either representations or warranties. (p. 395).

2. SAME—*Life Insurance—"Warranties."*

    Warranties in such a policy of insurance constitute part of the contract and stipulate for the absolute truth of the statement made. They must be strictly complied with, else the policy may be avoided. (p. 395).

3. SAME.—*Life Insurance—"Representations."*

    Representations are not, strictly speaking, part of the insurance contract, but are collateral thereto. They are statements made to the insurer before or at the time of making the contract, presenting the elements upon which the risk is either accepted or rejected. (p. 395).

4. SAME—*Life Insurance—Representations or Warranties.*

    Such statements or declarations will not be construed to be warranties unless the provisions of the application and the policy taken together leave no room for any other construction. (p. 395).

5. SAME—*Life Insurance—Representations—Effect.*

    A policy of insurance issued upon an application containing statements and declarations which are treated as representations will not be avoided because of the falsity thereof, unless they are untrue in a material regard, and are made with the intent to mislead or deceive, or are a statement of some material fact as true without its being known to be true, and which has a tendency to mislead. (p. 397).

6.  SAME.—*Life Insurance—Representations—Statements in Application.*

    Statements or declarations made by an applicant for insurance as to the condition of his health, as to his habits in regard to the use of intoxicating liquors, as to his previous condition of health, and as to his having consulted or not consulted physicians within a prescribed period, will be treated as representations unless it plainly appears that the parties intend them to be warranties. (p. 397).

7.  SAME—*Life Insurance—Representations.*

    The answer of an applicant for insurance to a particular question directed to him will be treated as a material representation. The fact that a specific answer is sought and obtained in regard thereto is proof that the parties consider the matter material. (p. 397).

8.  SAME—*Life Insurance—Treatment by Physicians—Validity of Policy.*

    In determining whether or not an applicant for insurance has been treated by a physician so as to render voidable a policy of insurance issued to him upon the representation that he had not been so treated, prescriptions for slight temporary ailments will not be considered; neither will such slight temporary ailment be taken into consideration in determining the truth or falsity of a representation as to diseases or maladies with which the insured may have been afflicted. (p. 397).

9.  SAME—*Life Insurance—Use of Intoxicants—Validity of Policy.*

    A policy of life insurance issued upon an application in which is contained a representation of the insured that he did not, at the time of making said application, use intoxicating drinks, and had not used any for more than a year, but that he had been intoxicated twice within the preceding five years, will not be avoided by proof that the insured more than two years prior to the application for the insurance had used intoxicating drinks, and had been under the influence thereof on at least two occasions. (p. 397).

10. SAME—*Life Insurance—Treatment by Physician—Avoidance of Policy.*

    A policy of insurance, issued upon an application therefor, in which the representation is made, in answer to a question asked, that the insured had not consulted nor been treated by a physician within five years next preceding the making of said application, will be avoided at the instance of the insurer upon a showing that the insured within said time had been treated for several consecutive months for a chronic malady with which he was then suffering. (p. 398).

11.    SAME—*Life Insurance—Health—Avoidance of Policy.*

A policy of insurance will be avoided at the instance' of the insurer where the insured, in answer to a question in his application for insurance, states that he had since childhood only suffered from certain named complaints, from which he had fully recovered, when the evidence shows that he had been treated for several months at a time long subsequent to the complaints mentioned by him for a disease with which he was then suffering. (p. 398).

12.    EVIDENCE—*Action on Policy—Opinions.*

Upon the trial of a suit to recover upon a policy of life insurance, where the defense is that the insurer has the right to avoid the policy because of alleged false representations made by the insured in his application therefor, the opinion of the medical director of the insurer as to what action would have been taken upon such application had all of the representations therein made been in accordance with the truth as contended for by the insurer, or as to the general custom of insurance companies in passing upon an application containing such representations, is not admissible as evidence.    (p. 400).

(POFFENBARGER, JUDGE, absent).

Error to Circuit Court, Wetzel County.

Action by W. O. Myers, committee, etc., against the Mutual Life Insurance Company of New York. Judgment for plaintiff. and defendant brings error.

*Reversed and remanded.*

*Brown, Jackson & Knight, Thos. P. Jacobs* and *Frederick L. Allen,* for plaintiff in error.

*Edwin O. Keifer,* for defendant in error.

RITZ, JUDGE:

This writ of error seeks the reversal of a judgment rendered upon two policies of insurance issued by the defendant upon the life of Columbus J. Myers. The policies in question were issued on the 15th day of April, 1912, and Myers died on the 14th day of December of the same year. Prior to the issuance of the policies Myers made to the company written applications therefor. In these applications he made certain statements as to the condition of his health, both at that time and previously, as to his having consulted a physi-

cian, or physicians, within five years previous thereto, and as to his habits in regard to the use of intoxicating liquors. In answer to a question contained in the application Myers stated that he had had three attacks of Pneumonia in 1887, twenty-five years prior thereto, and two attacks of Tyhpoid fever in 1876 and 1896; that his recovery from all of those illnesses had been complete; and in answer to a specific question he replied that the above were all of the illnesses, diseases, or injuries with which he had been afflicted since childhood. He was also asked to state every physician who had prescribed for him, or whom he had consulted in the past five years, and to this question he answered that no physician had prescribed for him, and he had consulted none within that time. In answer to a question as to whether or not he was in good health, he answered that he was, and that there was no impairment of his health. He further replied, in answer to a question as to whether he had any bodily deformity, that he had none. He was asked in the application whether or not he used wine, spirituous or malt liquors, and replied thereto that he did not. In answer to a question as to what kind of such liquors he had used within the past year, and how much in any one day, he replied that he had used none within that time. In answer to a question as to whether or not he had been intoxicated during the past five years, he answered that he had been so intoxicated twice within that time. He also replied that he had never taken treatment for the liquor or drug habit, and that he was a total abstainer and had been such for several years. It is charged in the statement of defense made by the company that the answers made by Myers above referred to were false; that in fact and in truth he had had other illnesses since childhood than those referred to; that he had consulted physicians, and had been prescribed for by physicians within five years next preceding the making of the application; that he was not in good health at the time he made the application; and further that he was at said time, and had been for a long time prior thereto, addicted to the excessive use of intoxicating liquors, and because of these alleged

untruthful and false representations the defendant sought to avoid the payment of the amount of the policies.

The evidence offered in support of these contentions shows that Myers was formerly a resident of Wetzel county, West Virginia; that several years prior to the making of the applications for these policies of insurance he removed to Oklahoma; that he resided there for awhile, and about the year 1907 or 1908 he removed to New Mexico, where he resided for about two years, returning to Oklahoma in the fall of 1909 or 1910, where he resided until a short time after the issuance of the policies, when he returned to his old home in Wetzel county, West Virginia, dying there in December, 1912. In regard to the use of intoxicating liquors, it appears that during the two years that Myers lived in New Mexico he drank intoxicating liquors to some extent. This is shown by a number of witnesses. It appears that he lived at some distance from a town where intoxicating liquors were sold, and went to that town some two or three times a month, and that on those occasions he drank intoxicating liquors. No witness, however, testifies to seeing him under the influence of such liquors during this time on more than two occasions. There are some witnesses introduced by the defendant company who testify that on some occasions after Myers returned to Oklahoma from New Mexico he appeared to them to be under the influence of intoxicating drinks, but no witness testifies that he ever saw him take a drink after he returned from New Mexico. A great many of his intimate business and familiar associates testify that Myers was not only a temperate man, but that during the time he lived in Oklahoma, after his return from New Mexico, they never knew him to take a drink, or to be under the influence of liquor. We think it may safely be said that the evidence proves without substantial contradiction that Myers did use intoxicating liquors while he was in New Mexico, which was more than two years before the issuance of the policies of insurance, but that he had been a total abstainer therefrom after his return to Oklahoma.

It is also shown that during the time Myers was in New Mexico he had been treated by Dr. J. T. Stone. This treat-

ment was during the year' 1909.   Dr. Stone testifies that
Myers came to him and complained of his stomach hurting.
him, and gave him the history of his case, from which he
pronounced the disease chronic gastritis, and administered
to him treatment therefor.   He testifies that he prescribed
for him for this trouble off and on for several months, and
he thinks he was also treated by other doctors for the same
trouble.   It is also shown that after his return to Oklahoma,
and just a few months before he applied for the policies of
insurance sued on in this case, he was treated by Dr.
Schrader.   This physician testifies that in February or
March, 1912, Myers came to his office and consulted him in
regard to his condition, complaining of his kidneys bothering
him, and asked the doctor to give him something to relieve
him; that after making no examination of the patient other
than to ask him some questions in regard to his troubles,
he prescribed for him, and this was the only occasion upon
which this physician treated him.   No attempt is made to
show that Myers was not, apparently at least, in good health
at the time of the making of the applications.

The question involved here is, do the facts shown above
furnish ground to the defendant for avoiding the payment of
the amount of the policies?   Declarations and statements
made by a person desiring insurance in his application for
a policy therefor are, according to their nature and effect,
distinguished as representations or warranties.   Represen-
tations are in their nature no part of the contract of insur-
ance.   Their relation thereto is collateral.   They are facts
presented to the insurer before or at the time of making the
contract as a presentation of the elements upon which the
risk is to be accepted or rejected.   They furnish a basis for
the contract on the faith of which it is entered into, and if
false in any respect material to the risk the contract may be
avoided.   A warranty, on the other hand, is a part of the
contract itself.   It defines by way of particular stipulation
and condition the precise limits of the obligations which the
insurer undertakes to assume, and no liability can arise out-
side of such limits.   As to whether or not the statements made
by Myers, which it is contended were false, were warranties

or representations, there can be little doubt in this juris-diction. Declarations of the same character made in appli-cations for life insurance were involved in the cases of *Schwarzbach* v. *Protective Union*, 25 W. Va. 622; *Logan* v. *Assurance Society*, 57 W. Va. 384; and *Marshall* v. *Insurance Association*, 79 W. Va. 121, and in all of those cases were held to be representations and not warranties. That conclusion is not only fixed by those decisions, but is well supported by the authorities. 3 Cooley's Briefs on Insurance, pp. 1931 etc.; 3 Joyce on Insurance, §§ 1882 etc. We conclude, therefore, that these declarations were representations made by Myers to the defendant company as a basis upon which it might determine the acceptance of the risk, and if accepted, upon what terms. Their effect upon the policies of insurance is determined substantially by the same rules as representations made in the procurement of any other contract. If they are false in a material respect to the knowledge of the one making them, they will afford ground for the avoidance of the contract at the instance of the party defrauded. The rule has been stated that to avoid a policy of insurance by misrepresentation the false statements must have been made wilfully, and with intent to deceive, and must have been relied upon by the insurer. It necessarily follows from this that a misrepresentation made innocently will not avoid the policy; neither will a false representation as to a fact not material. The trouble arises, however, in the application of these general rules to particular cases. It may be said that where a representation is made by one in an application for insurance of a fact peculiarly within his own knowledge, and it turns out to be untrue, it will be held to be a fraudulent representation. In many of the cases it has been argued that where such a representation is false, but it did not appear that the insured had not acted in perfect good faith in making it, it would not be treated as a fraudulent representation. But the correct rule in this regard seems to be that laid down in *Schwarzbach* v. *Protective Union*, *supra*, to the effect that as to those representations peculiarly within the knowledge of the insured, if the statements are untrue he is guilty of a legal fraud though he may

not have intended to deceive, and he will be bound by the effect thereof. *Logan* v. *Assurance Society, supra; Marshall* v. *Insurance Association, supra.* The doctrine of these cases seems to be that where a representation is made as to the existence or non-existence of a certain state of facts which, from their peculiar nature, the assured is bound to know about, he will be bound by the representation, notwithstanding for the moment he may not have recalled the facts, or have overlooked them.

Difficulty is also encountered in determining what representations are material in such an application. In this regard it seems to be firmly established by the authorities that by making inquiry in regard to the existence or non-existence of a particular fact, or facts, the same is made material; it is brought into prominence by the very force of the fact that information is sought concerning the particular matter, and for this reason the courts with practical unanimity treat answers to such specific inquiries as material representations. 3 Joyce on Insurance, § 1914; *Schwarzbach* v. *Protective Union, supra; Logan* v. *Assurance Society, supra;* and *Marshall* v. *Insurance Association, supra.* Applying these rules to the representations made by Myers, which it is charged here were false, it may be said that they were material representations. They were statements which the insurance company had a right to rely upon as being true, and further they were in the main statements of facts or circumstances within the knowledge of the applicant, and if they were false within the meaning of the law, then the defendant could avoid the policies of insurance for that reason. 14 R. C. L. pp. 1068 etc.; 3 Joyce on Insurance, §§ 1884 etc.; 3 Cooley's Briefs on insurance, pp. 1959 etc.; *Masonic Life Association* v. *Robinson,* 149 Ky. 80; *Knights of Maccabees* v. *Shields,* 156 Ky. 270; *Quinn* v. *Mutual Life Insurance Company,* 91 Wash. 543; *Metropolitan Life Ins. Co.* v. *Solomito,* (Ind.) 112 N. E. 521; *Germania Life Ins. Co.* v. *Klein,* (Col.) 137 Pac. 73; *Price* v. *Phoenix Mutual Life Ins. Co.,* 17 Minn. 497, 10 Am. Rep., 166; *Thorner* v. *John Hancock Mutual Life Ins. Co.,* 149 N. Y. Supp. 345; *Burruss* v. *National Life Association,* 96 Va. 543; *Aetna*

*Life Ins. Co.* v. *Moore,* 231 U. S. 543; *Mutual Life Ins. Co.* v. *Hylton-Greene,* 241 U. S. 613. Many more authorities might be cited to the same effect, but these representative ones will serve to illustrate the principles controlling in this case. The question, therefore, remains, were these representations false and fraudulent? The representation made by Myers in regard to his use of intoxicating liquors was that he did not at the time of the application for the policies of insurance use any intoxicating liquors, and that he had not for a year; in fact, had been a total abstainer for several years; that he had within the five years next preceding, however, been intoxicated on two occasions. From the recital we have before made of the facts proved in this regard it will be seen that the statements made by Myers at the time he made the applications were very nearly, if not quite, the facts proved as to his habits in this regard. It sufficiently appears, we think, that he was a total abstainer for more than two years prior to the time the applications were made, and it does not appear from the evidence that he was ever intoxicated on more than two occasions within the five-year period, while it is shown that within that five-year period, but more than two years prior to the time of making the applications, he had been an occasional drinker of intoxicating liquors. We find that the proof on this question does not show the falsity of the representations made by the assured.

As to the representation that the assured was in good health at the time of the making of the applications, there is no evidence to the contrary. It is true, it is shown that a short time before that Dr. Schrader had prescribed for him on one occasion, and that more than two years before he had been treated for several months for chronic gastritis, but there is no showing that he was to his knowledge affected by any disease at the time he made the applications for the policies. In fact the proof of those who knew him most intimately is that he was in apparent good health without any indication of disease of any kind.

It is shown, however, beyond question that he had consulted physicians at least twice within the five years next preceding the issuance of the policies, and that he had suf-

fered from an illness during that time not disclosed by his applications. It is argued that not every consultation with a physician, or every temporary illness will make such a representation false, and no doubt this is the law. Many times physicians are consulted to furnish relief from slight temporary indispositions, such as headaches and colds, and it is held that such consultations are not within the purview of a representation of this character, nor are such diseases within the same. 3 Cooley's Briefs on Insurance, p. 2163; *Logan* v. *Assurance Society, supra.* But can we say that the evidence in this case justifies the conclusion that the malady for which Myers received treatment while in New Mexico covering a period of several months was such a slight indisposition? The insurance company was entitled to have Myers act fairly and honestly with it. He was bound to know when these questions were asked that the insurance company would act upon his answers, and his concealment of the treatment he had received during a period of several months cannot be looked upon in any other light than that it was fraudulent and deceitful and calculated to mislead the defendant. The treatment received by him from Dr. Schrader on the one occasion testified to by that physician may have been for only a slight indisposition, as it seems not to have been followed up, and we think it might well be said that his trouble at that time was of such character as not to fall within the terms of the question asked. We cannot say this, however, in regard to the treatment undergone by him while in New Mexico. It extended over a period of several months; he was prescribed for by a physician a number of times, different remedies being prescribed on different occasions to meet the varying phases of the trouble with which he was suffering. Clearly it was the duty of Myers in answering this question to have informed the company of his treatment by this physician, and the malady with which he was then suffering. There is no attempt made to contradict in any way the testimony of the doctor offered on this phase of the case, and the jury could not be allowed to disregard it, nor could the jury be allowed to say this misrepresentation in this regard was immaterial.

The defendant assigns as error the action of the court in refusing to allow its medical director and his assistant to testify as to what action would have been taken upon the insured's applications if he had answered the questions correctly, to which it is contended he made false answers, and also as to the custom of insurance companies generally in acting upon such applications. It was entirely immaterial what the opinion of these witnesses at this time might be. The parties fixed the materiality of these inquiries and the answers thereto, and the opinion of any witness as to what would have happened had the answers been different, or as to the customs of insurance companies generally in regard to passing upon applications, would have proved nothing that would in any way enlighten the jury. At most such answers were merely the opinion of the witnesses, not dependent upon scientific knowledge or skill, and there is no rule of law which permits the admission of such opinion as evidence. *Schwarzbach* v. *Protective Union,* 25 W. Va. 622-651.

For the reasons above pointed out, we reverse the judgment, set aside the verdict of the jury, and remand the cause for a new trial.

*Reversed and remanded.*