## ZOGG v. BANKERS' LIFE CO. OF DES MOINES, IOWA.

### No. 3352.

Circuit Court of Appeals, Fourth Circuit.

Jan. 10, 1933.

F. M. Stambaugh, of Charleston, W. Va. (Lively & Stambaugh, of Charleston, W. Va., on the brief), for appellant.

Geo. S. Couch, of Charleston, W. Va. (Brown, Jackson & Knight, of Charleston, W. Va., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and PAUL, District Judge.

PAUL, District Judge.

H. C. Zogg, the appellant (and plaintiff in the lower court), on April 20, 1929, made application to the defendant company for

life insurance, and in pursuance thereof, and after a physical examination, there were issued to the plaintiff two policies in the sum of $10,000 each, dated June 1, 1929. In addition to insuring the life of the plaintiff, the policies insured also against permanent and total disability, occurring during the life of the policies, and caused by bodily injury or disease, originating after the date of the policies. The benefits accruing upon the happening of such disability were to be (1) the waiver of the payment of any premiums falling due on the policies during the period of such disability, and (2) the payment to the insured during the period of such disability of a monthly income equal to 1 per cent. of the face amount of the policies.

Some four or five months later, the plaintiff was solicited by an agent of the defendant to take out additional insurance; it being represented to him that he could procure this additional insurance without a further physical examination. The plaintiff, on October 31, 1929, applied for this further insurance; and the defendant issued to him, under date of November 1, 1929, two policies in the sum of $5,000 each. One of these contained the same provisions contained in the first two policies as to benefits for disability, namely, waiver of premiums and the payment of a monthly allowance of 1 per cent. of the face of the policy during the period of disability; the other of these $5,000 policies provided only for waiver of premiums during disability.

The plaintiff alleges that in the spring of 1930, he became ill, and that because of ill health, involving operations on the gall bladder and the appendix, he was disabled within the terms of the policy from April 10, 1930, until May 15, 1931. The plaintiff demanded of the defendant company that it pay to him a sum representing a monthly income of 1 per cent. of the face of the first three policies, for thirteen months, the alleged period of disability, and that it refund to him the premiums paid on all four policies during the period of disability. The aggregate of these items was $4,880.08. Payment was refused, and suit was instituted to recover the amount named.

The insurer defended upon the ground, among others, that the plaintiff, when applying for the original insurance on April 20, 1929, had made false statements in his application and to the medical examiner regarding the state of his health and the extent and nature of previous medical treatment, and that he had further, in his application for the last two policies, made October 31, 1929, made false statements as to the state of his health and as to medical treatment undergone by him since the date of the previous application for insurance.

Among answers made to the medical examiner accompanying the application, there occurs the following:

"21. a. Are you now in good health? Yes. * * *

"g. Have you ever consulted, been treated or attended by a physician or practitioner within five years? (Explain full, giving names and addresses of attending physicians or practitioners.) Nothing; tonsilectomy 1928.

"Have you ever suffered from any ailment or disease of

"C. The stomach or Intestines, the Liver, Kidneys or Bladder? No. * * *

"I. Have you consulted a physician for any ailment or disease not included in your above answers? No."

In making application for the insurance granted on November 1, 1929, the plaintiff was not required to undergo a further physical examination, but was required to furnish a statement in which the following occurs:

"17. a. Have you had any illness or injury since your last application for insurance in this company? No.

"b. Are you now in good health? Yes.

"18. a. When were you last under the care of a physician? About four years ago.

"b. For what? Removal of tonsils."

It is contended by the defendant that the plaintiff had been under treatment for inflamed gall bladder and for appendicitis (the ailments which resulted in his disability) throughout July and the latter part of June, 1929, and as early as April 4 and 5, 1929, and that he had, in February, 1929, consulted a physician and been treated by him. These contentions were based upon (1) a certificate of a Dr. O'Dell, dated January 7, 1931, in which the doctor stated that he had treated the plaintiff for inflamed gall bladder and chronic appendicitis on April 4 and 5, 1929, and later on in June and July of the same year; and (2) the testimony of a Dr. Dunn, who had been consulted by and who prescribed for the plaintiff on February 15, 1929. The dates named in February and April were both previous to the first application for insurance; those in June and July were subsequent to the first application, but prior to the second.

At the trial, Dr. O'Dell testified that, through an error in his office, a mistake had been made in the certificate made by him on January 7, 1931, as to the dates when he had treated the plaintiff; that as a matter of fact he had not treated the plaintiff for any physical disability or administered any medical aid to him prior to June 1, 1929. Dr. Dunn testified that he had given the plaintiff a prescription on February 15, 1929, but that he did not know at the time who it was for, that the medicine prescribed was not a specific for gall bladder trouble, and that, while it could be used for gall bladder conditions, it had been given as a laxative.

A fair statement of the evidence and the inferences to be drawn from it, as it appears in the present record, is therefore that the plaintiff had during June and July, 1929, suffered from an inflamed gall bladder and chronic appendicitis and had received a number of treatments for this condition; that he had not been treated, nor had he consulted a physician, during April, nor at any time prior to June 1st, except for the occasion on February 15th, when he obtained the prescription from Dr. Dunn.

On this state of the evidence, the District Court directed a verdict for the defendant as to the claim on all four of the policies. The court held the view that the statement accompanying the original application for insurance, to the effect that plaintiff had not consulted, been treated, or attended by, a physician within five years, was false, as shown by the testimony of Dr. Dunn concerning the prescription given on February 15th; that it was a false statement of a material fact affecting the issuance of the policies and absolved the defendant from liability. If this view were correct, it would undoubtedly affect all four policies, for the statements made to the medical examiner in the first application were taken as true, and formed, in part, the basis for the issuance of the last two policies.

But we think the lower court was in error in holding that the plaintiff's failure to disclose his consultation of a physician in February and the receipt of a prescription at that time was a material misstatement.

■■■ Bearing in mind the distinction between warranties and representations, we think it clear that the statements made by the plaintiff to the medical examiner are to be treated as representations only, and were so considered by the parties. There is no contention made that they are to be treated as warranties. The strong weight of authority is to the effect that a misrepresentation such

as will avoid a policy of insurance must be of a material fact, and the materiality is largely to be determined by whether the statement was one which affected the willingness of the company to enter into the insurance contract.

"To render the policy voidable a false representation must relate to a material matter, and must have been relied on by the insurer. A fair test of the materiality of a fact is found in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against so as to bring about a rejection of the risk or charging an increased premium." 14 R. C. L. p. 1022.

The rule is stated to substantially the same effect in 32 C. J. p. 1288, where it is said: "A material matter is one which probably will affect the decision of the company as to the making of the contract or as to its terms."

In the case of Livingston v. Maryland Insurance Company, 6 Cranch, 274, 279, 3 L. Ed. 222 (decided in 1810), this principle was recognized in the opinion by Chief Justice Marshall, who said: " * * * The effect of the misrepresentation or concealment on the policy, depends on its materiality to the risk. This must be decided by a jury under the direction of a court."

See, also, Mutual Ins. Co. v. Deale, 18 Md. 26, 79 Am. Dec. 673; Jefferson Ins. Co. v. Cotheal, 7 Wend. (N. Y.) 72, 22 Am. Dec. 567; Myers v. Mut. Life Ins. Co., 83 W. Va. 390, 98 S. E. 424; Continental Ins. Co. v. Kasey, 25 Grat. (Va.) 268, 18 Am. Rep. 681; Phœnix Life Ins. Co. v. Raddin, 120 U. S. 183, 7 S. Ct. 500, 30 L. Ed. 644.

■■■ If it be true that the prescription obtained by the plaintiff on February 15, 1929, was merely for a laxative, it can hardly be said, in the light of the principle above discussed, that concealment of the fact that such prescription had been obtained was a misrepresentation of a material fact. It is hard to believe that the willingness of the defendant to enter into the contract would have been affected by the knowledge that the plaintiff had, on one occasion some three months before the date of the policy, asked a doctor to prescribe a laxative. The statement that plaintiff had not within five years consulted a physician was untrue, but upon the record before us does not appear to have been material. Certainly its materiality is not so apparent as to justify the trial judge in refus-

ing to submit to a jury the question of its materiality.

▉ Similarly, we do not think there was a material misrepresentation by the plaintiff when he stated in his application that he was in good health and stated that he had not consulted a physician for "any ailment or disease not included in the above answers."

"Whether a representation that the insured had no disease was false depends on its substantial truthfulness, and, within the meaning of an application, 'illness' means a disease or ailment which is of such a character as to affect the general soundness and healthfulness of the system seriously, and not a mere temporary indisposition which does not tend to undermine and weaken the constitution." 14 R. C. L. p. 1068.

"The failure of the applicant to mention some slight indisposition or trivial or temporary ailment, for which he was treated, but which in no wise affected his general health, and did not increase the risks of insurance, does not avoid the policy." 14 R. C. L. p. 1074.

"Many times physicians are consulted to furnish relief from slight temporary indispositions, such as headaches and colds, and it is held that such consultations are not within the purview of a representation of this character." Myers v. Life Ins. Co., 83 W. Va. 399, 98 S. E. 424, 427.

The general rule appears to be that the term "good health" means that the applicant has no grave, important, or serious disease, and is free from any ailment that seriously affects the general soundness or healthfulness of the system, and that a mere temporary indisposition which does not tend to weaken or undermine the constitution does not render the policy void. See 40 A. L. R. note page 662, and cases there cited; Dilleber v. Home Life Ins. Co., 69 N. Y. 256, 25 Am. Rep. 182; Court of Honor v. Dinger, 221 Ill. 176, 77 N. E. 557.

It appears well settled that the terms "ailment" and "disease" as used in applications for insurance refer to disorders of a substantially serious nature such as to affect the general health, and do not include a mere temporary indisposition which, even though requiring medical treatment, is readily remediable.

In Conn. Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 5 S. Ct. 119, 28 L. Ed. 708, the application contained the following question: "Have you ever had any of the following diseases? * * * Affection of liver?" To this latter the applicant answered

"No." Evidence tended to show that he had been treated for some trouble of the liver. The defendant insurer requested an instruction that, if the jury believed "that the insured ever had had affection of the liver, * * * the policy is void, and the defendant is entitled to a verdict." This was refused and the instruction given was to the effect that: "Disease implied a substantial attack of illness, or a malady, which had some bearing on the general health of the insured, not a slight illness or temporary derangement of the functions of some organ."

The Supreme Court approves the instruction so given. See, also, Moulor v. Am. Life Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447; Logan v. Provident Sav. Life Assurance Society, 57 W. Va. 384, 50 S. E. 529.

In the case of McClain v. Provident Sav. Life Assurance Society of N. Y. (C. C. A. 3d Cir.) 110 F. 80, an applicant for insurance had answered in the negative to each of fifty or sixty questions asking as to whether he had ever had certain named diseases, and, in answer to the further question as to when and by what physicians he had been attended and for what complaint, had stated that he had had no medical attendance. It being found that the applicant had on a number of occasions been treated for indigestion and catarrh of the stomach, the trial court directed a verdict in favor of the insurer, holding that the plaintiff had warranted the truth of his answers and their materiality was not to be considered. In reversing this judgment, the appellate court held that, while the language of the application had "warranted the answers to be true," they were not warranties in the true sense of that term, but were merely representations, and, the jury having found that they were not material, judgment should have been for the plaintiff. To the same effect is Moulor v. Am. Life Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447.

For lengthy and careful discussion of the principles involved here, see McClain v. Provident Sav., etc., supra; Myers v. Mut. Life Ins. Co., 83 W. Va. 390, 98 S. E. 424; Manhattan Life Ins. Co. v. Francisco, 17 Wall. 672, 21 L. Ed. 698; Logan v. Assurance Society, 57 W. Va. 384, 50 S. E. 529.

▉ On the record before us, therefore, it appears that the answers made by the plaintiff, Zogg, in the medical examination accompanying his original application were not such as to avoid the insurance granted; they were either substantially true, or, where untrue, they were not material. However, if upon a retrial there appears serious question as to

the purpose of the consultation with Dr. Dunn on February 15, 1929, and of the prescription given on that date, the trial court will have to determine whether this evidence is such as to require him to submit to a jury the question of the materiality of the statements made to the medical examiner. Similarly the evidence may so develop as that the jury should be allowed to pass upon the question of whether the plaintiff did in fact suffer from any undisclosed disease, or whether his answers to other questions were substantially true.

These are questions of fact for the jury, but, as in other cases, may be taken from the jury and decided by the court where there is no substantial conflict of evidence.

As stated by this court in Union Indemnity Co. v. Dodd, 21 F.(2d) 709, at page 712, 55 A. L. R. 735: "The usual rules as to the determination of questions of law and fact, or as to the province of the court and jury apply to insurance cases." And see Manhattan Life Ins. Co. v. Francisco, 17 Wall. 672, 21 L. Ed. 698; Mut. Ins. Co. v. Deale, 18 Md. 26, 79 Am. Dec. 673; Livingston v. Maryland Ins. Co., 6 Cranch, 274, 3 L. Ed. 222; Myers v. Mutual Life Ins. Co., 83 W. Va. 390, 98 S. E. 424.

As to the last two policies obtained by the plaintiff, dated November 1, 1929, the record shows a decidedly different situation. In taking this insurance, the plaintiff was not required to undergo a further physical examination; but he was required to and did furnish a statement designed to supplement his previous examination and bring his medical history down to date. In this he stated that he had had no illness since making his previous application for insurance, that he was in good health, and that he had not been under care of a physician for four years—and then for removal of the tonsils.

As a matter of fact, during June and July, 1929, between the time of his original application and the second one, the plaintiff had been under repeated treatments for over a month for inflamed gall bladder and chronic appendicitis, the very complaints which caused his total disability some months later. The statements of the plaintiff therefore were untrue to his own knowledge, and in this case the misrepresentations were, in our opinion, material. Had the true state of facts been imparted to the defendant, there would seem little question that its willingness to enter into the contract would have been seriously affected thereby.

On the facts disclosed by the present rec-

ord, therefore, we are of opinion that the plaintiff was entitled to recover on the two policies dated June 1st, but not upon those of November 1st. However, as previously indicated, upon a retrial, the evidence may so develop as that the question of submission to a jury or of direction of verdict on any or all of the policies will be for the trial court to determine in accordance with the established principles of law applicable to such determination.

We think that nothing herein is in contradiction of the principles laid down in Keeton v. Jefferson Standard Life Ins. Co., 5 F.(2d) 183, or in Union Indemnity Co. v. Dodd et al., 21 F.(2d) 709, 55 A. L. R. 735, both previously decided by this court and cited by the defendant here. In each of those cases, gross misrepresentations were made as to matters, the importance and materiality of which were so plainly apparent as to permit of no question.

For the reasons set out, the judgment is reversed and the cause remanded to the District Court for further proceedings.

Reversed.